# Richmond

## Loria Binkley v. J. V. Parker, et al.

January 16, 1950.

Record No. 3562.

Present, All the Justices.

The opinion states the case.

*Louis B. Fine*, for the appellant.

*Ivor A. Page, Jr.*, for the appellees.

BUCHANAN, J., delivered the opinion of the court.

The circuit court dismissed the complainant's bill before any evidence was taken and complainant asserts on this appeal that it was error to do so.

At first January rules, 1948, the complainant, Loria Binkley, filed her bill in chancery against J. V. Parker and others for the purpose of collecting a judgment. While the bill is a good example of how such a bill should not be drawn, it may be interpreted as making these allegations:

That complainant obtained a judgment for $5,000 against Parker in 1947, which was duly docketed; that prior to its

rendition Parker executed a deed of trust to Ruffin, Trustee, to secure payment of a debt of $1,000, "and your complainant believes the same is paid;" that an additional mortgage of $6,000 is of record from Parker to secure Gotta, "which your complainant avers to be fraudulent;" that Parker is also the owner of two other pieces of property, designated "B" and "C", in Norfolk, subject to a deed of trust; that Parcel "B", known as 850 West 50th street, was conveyed to defendant Porter "in fraud of the rights of your complainant;" and that Parcel "C", known as 207 West 33rd street, was conveyed to Carroll R. Morris and Martha Morris, who conveyed it to a Trustee "for the benefit of the said J. V. Parker;" that at the time of the rendition of the judgment Parker was also the owner in fee simple of real estate described in Exhibit D.

The bill alleged that complainant's judgment remains unpaid and is a subsisting lien "upon all of the real estate;" that "the trust lien hereinbefore mentioned is also unpaid and constitutes a lien upon the said real estate;" that the rents and profits will not pay off the liens in five years.

The persons alleged to be interested were made parties defendant, answers under oath were waived, and the bill prayed that the cause be referred to a commissioner to take an account; "that all fraudulent conveyances and all fraudulent deeds of trust be set aside;" that the real estate be sold, and for general relief. By decree of March 18, 1948, other persons were made parties defendant and a temporary receiver was appointed to collect the rent from certain of the properties. The receiver afterwards reported collection of $128 and was discharged by decree of April 27, 1948.

On April 24, 1948, defendant Parker filed his answer, in which he admitted the judgment, denied that the $1,000 deed of trust to Ruffin, Trustee, had been paid; denied that the $6,000 deed of trust to secure Gotta was fraudulent; asserted that the deed for Parcel "B" was made to Porter before the judgment and was not recorded until after the judgment, but was made in good faith and not in fraud of complainant's

rights; and denied that the deed of trust on Parcel "C" was for Parker's benefit.

The answer admitted that Parker was the owner of the equity of redemption in the piece of property on Ward Avenue, in Norfolk, referred to in the bill as being described in Exhibit D; and denied that the judgment was a lien on any of the real estate "except the equity of redemption of the Ward Avenue property, owned by your respondent."

On October 7, 1948, all but four of the other defendants filed separate answers denying all the allegations of the bill, except that with respect to the judgment, as to which they said they were not advised, and asking for strict proof.

On October 12, 1948, complainant's counsel, without having presented any evidence, tendered and asked the court to enter a decree referring the case to a commissioner with direction to report, among other things, "what real estate was transferred by the defendant without any consideration as set out in said bill of complaint," and whether "the deed of trust note as described in the bill of complaint made by Carroll R. Morris and Martha Morris, was transferred without any consideration."

The court refused to enter this decree and on November 8 complainant's counsel tendered and asked the court to enter another decree, noting the refusal to enter the decree of reference, but granting leave to the complainant "to take evidence in support of the decree of reference."

The court also refused to enter this decree, but on the same day entered a decree bringing the cause on to be heard on the bill, exhibits and answers, "on consideration of which it appearing to the Court that the defendants have by answer denied all the material allegations in the said bill, and that no evidence has been taken in support of same, it is adjudged, ordered and decreed that the said bill be and the same is hereby dismissed."

The court was right in refusing to enter the decree of reference, but wrong in dismissing the complainant's bill.

A decree of reference would have been premature at the

time offered. The charges of fraud and lack of consideration in the transfers of the properties having been made by the complainant and denied by the defendants, the burden was on the complainant to prove these charges, so it might first be determined by the court whether those properties, or any of them, were in fact subject to the lien of her judgment. She was not entitled to shift to the court's commissioner the burden of taking evidence.

As far back as 1871 it was said, in *Lee County Justices* v. *Fulkerson*, 21 Gratt. (62 Va.) 182, 189-90, that this court had repeatedly decided that an account should not be ordered in any case, unless shown to be proper by the pleadings and proof; and that this could not be questioned "unless it can be maintained that a court of equity may decree an account for the purpose of furnishing evidence in support of the allegations of a bill."

In *Watkins* v. *Young*, 31 Gratt. (72 Va.) 84, 94, this was repeated, and 2 Rob. Pr. (old), p. 359, was quoted to the effect that nothing in chancery practice has been productive of so much mischief as orders of account unwisely made; that often an account had been ordered before the court decided the point upon which the propriety of taking the account depended, only to decree later, after expenditure of time and money, that the account was unnecessary.

In *Millhiser* v. *McKinley*, 98 Va. 207, 208, 35 S. E. 446, the bill charged that certain debts were individual and not partnership debts; the answers denied the charge and asserted they were all firm debts. It was said: "The burden was upon the complainants to make good the charge. An order of reference is not to be awarded to enable a plaintiff to make out his case. It should not be made for the purpose of furnishing evidence in support of the allegations of the bill, nor until he has the right to demand it."

In *Carle* v. *Corhan*, 127 Va. 223, 233, 103 S. E. 699, 702, it was sought to hold individually liable the officers of a corporation who had signed notes for the corporation. The defendants answered denying liability and "when the case

first came on to be heard," a commissioner was appointed and directed to report, among other things, as to who was liable on the notes. It was held that it was not proper to refer the cause to a commissioner upon the question of the liability of the defendants. "That was a question of law for determination by the court upon the evidence adduced." We said that in such a case the court cannot delegate to a commissioner the duty of weighing the evidence and deciding the case; that the reference in itself was harmless error, but the court and not the commissioner must decide the case on the evidence. See also, *Sadler* v. *Whitehurst*, 83 Va. 46, 1 S. E. 410; *Beale* v. *Hall*, 97 Va. 383, 34 S. E. 53; *Savings Bank* v. *Todd*, 114 Va. 708, 77 S. E. 446.

But even though the complainant asked for a decree she was not entitled to, it did not follow that her bill should be dismissed. It is true that in some of the cases referred to a reference was refused and the bill was dismissed, but in those cases the record showed that to be the proper course. In *Lee County Justices* v. *Fulkerson, supra*, for example, usually referred to in the later cases as authority for that action, it plainly appeared that the complainant was trying to thresh over old straw, and it was clear, as the court said, that the complainant was "not entitled to any relief in a court of equity or elsewhere." Where such action is taken, the record should show that the complainant's suit lacks merit or, after being warned, he has failed to prosecute.

The situation here should not be confused, as defendants seem to do in their brief, with that existing when a cause is heard on the bill and answer. That is a well-recognized equity procedure where the complainant desires to submit to the court the sufficiency of the answer as a defense to the case asserted in the bill, and the case is thereupon set down for hearing on the bill and answer. The effect of this is to admit the truth of all matters of fact sufficiently pleaded in the answer, whether responsive to the bill or in confession and avoidance, and to submit to the court for decision the question whether, on the facts as they appear

from the answer, the decree should not be in favor of the complainant. If on such hearing, the answer is wholly insufficient in law as a defense to the bill, the complainant is entitled to a decree; but if held sufficient, the bill is dismissed. Lile, Equity Pl. & Pr., 2d ed., secs. 249-250, pp. 122-3; *McClintock* v. *Richlands Brick Corp.*, 152 Va. 1, 6-7, 145 S. E. 425, 426; *Walsh* v. *Walsh*, 177 Va. 174, 12 S. E. (2d) 757; *Ashworth* v. *Cole*, 180 Va. 108, 114, 21 S. E. (2d) 778, 781.

In the present case the complainant had a judgment which the judgment debtor admitted was a lien on an equity of redemption, and an issue had been made by the pleadings on whether it was also a lien on additional property. Therefore, when the decree of dismissal brought the case on to be heard on the bill, exhibits and answers, the case was not ready for final hearing, but the hearing was then interlocutory, toward getting the case in shape to be properly heard and finally adjudicated on its merits. 19 Am. Jur., Equity, sec. 384, p. 262; 30 C. J. S., Equity, secs. 480, 482, pp. 876-7.

Upon the filing of the answers, replication was made as a matter of course. Code, 1942 (Michie), sec. 6138. The parties being thus at issue, the bill should not have been dismissed until the complainant had been given an opportunity to take evidence. 30 C. J. S., *supra*, sec. 566, p. 959. The bill may, of course, be dismissed for want of diligence in its prosecution. *Idem*, p. 960. But that penalty should be imposed only where there has been unreasonable delay, and usually after proper warning. While a complainant may take his depositions as soon as his bill is filed, Code, 1942 (Michie), sec. 6225, he may, and usually does, await the filing of the answer, after which he should have a reasonable time to present his evidence. "The court has the power," says Mr. Lile, "to rule either party to greater diligence, and to fix a limit of time beyond which no further testimony may be taken; but counsel in Virginia who would resort to such harsh and unaccustomed measures in a chancery suit, except under very unusual circumstances, would be regarded

by his professional brethren as a disturber of ancient traditions and as encroaching upon one of the cherished privileges of the profession." Lile, Equity Pl. & Pr., sec. 271, p. 133.

Courts should not allow the privilege to be cherished to the point of causing unnecessary delay; but that charge is not made against the complainant here, nor could it be supported by the record. She should be given a reasonable time to present her evidence; not, of course, "in support of the decree of reference," as her offered decree expressed it, but in support of the allegations of her bill.

The decree dismissing the bill is therefore reversed and the cause is remanded for proper proceedings.

*Reversed and remanded.*