**Richmond**

Essie Mae Nash

v.

Leslie Curtis Jewell

Record No. 811247.

April 27, 1984.

Present: All the Justices.

*Peter W. Smith (Robert C. Stackhouse; Stackhouse, Rowe & Smith*, on briefs), for appellant.

*John S. Norris, Jr. (Williams, Worrell, Kelly & Greer, P.C.*, on brief), for appellee.

COCHRAN, J., delivered the opinion of the Court.

Essie Mae Nash filed a motion for judgment in 1977 against Leslie Curtis Jewell seeking to recover damages for personal injuries allegedly arising from a 1975 automobile accident caused by Jewell's negligence. After service of process was obtained by serving the Commissioner of the Division of Motor Vehicles, Jewell's counsel filed grounds of defense on April 11, 1978. During the next two years no orders were entered or proceedings initiated in the action. On May 27, 1980, Nash filed a praecipe requesting that her case be set for trial; at the docket call on June 5, over Jewell's objection, trial was set for August 21. On July 8, Jewell filed a motion to discontinue the action pursuant to Code § 8.01-335A. Nash's answers to interrogatories which Jewell had delivered or mailed to her on July 7 were filed on or about August 1.

At a hearing on the motion to discontinue, Nash's counsel stated that he would take a nonsuit. Later on the same day, he reconsidered and informed the trial judge that he desired to with-

draw the nonsuit. After Jewell's counsel had been notified a hearing was conducted. By order entered September 1, 1980, over Jewell's objection, the trial court granted Nash's motion to withdraw the nonsuit but continued the hearing on her motion for a rehearing of Jewell's motion to discontinue the action. On April 9, 1981, after a hearing, the trial court granted Jewell's motion to discontinue on the ground that Nash had "slept" on her rights too long. The court then denied Nash's motion to reinstate the case and, after a rehearing, over Nash's objection, again denied her motion.

Code § 8.01-335 provides in pertinent part as follows:

> **§ 8.01-335. Certain cases struck from dockets after certain period; reinstatement.** — A. Any court in which is pending an action, wherein for more than two years there has been no order or proceeding, except to continue it, may, in its discretion, order it to be struck from its docket; and it shall thereby be discontinued. The clerk of the court shall notify the parties in interest if known, or their counsel of record at his last known address, at least fifteen days before the entry of such order of discontinuance so that all parties may have an opportunity to be heard on it. Any case discontinued under the provisions of this subsection may be reinstated, on motion, and after notice to the parties in interest if known or their counsel of record, within one year from the date of such order but not after.
>
> B. Any court in which is pending a case wherein for more than five years there has been no order or proceeding, except to continue it, may, in its discretion, order it to be struck from its docket; and it shall thereby be dismissed.

On appeal, Nash argues that Code § 8.01-335 was inapplicable because the filing of a praecipe and the setting of a trial date demonstrated that the action had not been dormant for two years before Jewell filed his motion to discontinue. Nash further contends that the trial court abused its discretion in discontinuing the action and then refusing to reinstate it. Jewell has assigned cross-error to the trial court's order permitting Nash to withdraw her nonsuit.

We do not agree with Nash that Code § 8.01-335 was inapplicable. We will assume, without deciding, that filing the prae-

cipe and setting the case for trial were "proceedings" within the meaning of the statute. The action, however, had been pending for more than two years before these steps were taken. Under the statute, once the two-year period of inactivity had passed, the trial court had discretionary authority to discontinue the action.

The crucial question is whether the trial court's discontinuance of this action constituted an abuse of discretion. In resolving this question we will review the language of the statute to determine the legislative intent.

■ There are significant differences between subsections A and B of the statute. Under the five-year provision of Subsection B, a trial court may, in its discretion, without notice to parties to the litigation or their counsel, order a case struck from the docket. The effect of such an order is to dismiss the action. It is apparent that the purpose of this subsection of the statute is to enable trial courts to eliminate from their dockets cases for which there is no reasonable prospect of trial. In summarily dismissing such cases, trial courts may thus promote efficiency in the administration of justice by saving the time of court personnel which would otherwise be required to preserve on the courts' dockets actions long forgotten or abandoned by litigants and lawyers.

■ Subsection A provides for less drastic action by trial courts in controlling their dockets and requiring that law actions be moved along with reasonable diligence. This subsection gives trial courts discretionary authority to order law actions, dormant for more than two years, struck from the dockets. The effect of such an order, however, is to discontinue, not dismiss, the action. More importantly, such an order may not be entered until the parties, or their counsel of record, have been given at least fifteen days notice and an opportunity to be heard. Moreover, any discontinued case may be reinstated within one year on motion and after notice to interested parties or their counsel of record.

It thus appears that the purpose of Subsection A is to enable trial courts to identify cases which litigants or their counsel are not interested in pursuing to a conclusion. Subsection B permits courts to dismiss inactive cases without notice; by contrast, the purpose of Subsection A is to enable courts to ascertain from the plaintiffs whether there is a desire and intent to try cases which have been dormant for two or more but less than five years. Subsection A provides a device designed to benefit the trial courts in setting cases for trial and expediting litigation; it does not provide

substantive rights to litigants to have cases dismissed for failure to prosecute within two years.

When the trial court had before it Jewell's motion to discontinue, Nash had filed a praecipe and obtained a trial date. The purpose of Subsection A, therefore, was served. The trial court knew that Nash had not abandoned the case, was ready for trial, and had arranged for an early trial date. There was no reason, therefore, for the trial court to put Nash on terms to try the case. We have no desire to inhibit the trial courts in their laudable efforts to clear their dockets and move litigation to a conclusion. But, on the record in this case, we are compelled to conclude that the trial court failed to perceive that the proper use of the two-year statute is to expedite rather than to terminate litigation.

The issue of dismissal for want of diligent prosecution has arisen in chancery causes and law actions. In *Binkley* v. *Parker*, 190 Va. 380, 57 S.E.2d 106 (1950), the trial court dismissed plaintiff's bill without giving her the opportunity to take evidence, though she appeared to have been willing to do so. We reversed, noting that dismissal for want of a diligent prosecution "should be imposed only where there has been an unreasonable delay, and usually after proper warning." *Id.* at 387, 57 S.E.2d at 109.

In *Carter* v. *Cooper*, 111 Va. 602, 69 S.E. 944 (1911), two actions in ejectment were brought against a number of defendants. Separate trials were required for the defendants, and the cases remained on the docket for seventeen years, the only activity being continuances. The trial court dismissed each case for failure to prosecute with due diligence, although plaintiffs said they were ready for trial. In reversing the trial court, we held that since the plaintiffs were ready to go to trial, they should have been permitted to do so. We also noted that defendants had "chosen to pursue a course of inaction, thereby tacitly consenting to the delay." *Id.* at 605, 69 S.E. at 945.

In the present case, Jewell made no effort to have a trial date set. His counsel stated in oral argument that it would have been foolish to ask for a trial date, as Jewell's whereabouts were unknown to him. Nevertheless, the record indicates that Jewell, for whatever reasons, tacitly consented to the delay until a few weeks after the expiration of the two-year period specified in the statute. Although *Carter* and *Binkley* were decided before the enactment of Code § 8.01-335, the rationale of those cases remains sound and is applicable in the construction of the statute. As a general

rule, if a plaintiff who is ready and willing to go to trial is brought before the court under the provisions of Code § 8.01-335, and demonstrates an intent to proceed with his case, the court should not discontinue his action. In the present case, Nash had demonstrated that she was ready for trial and had arranged to have a trial date set before Jewell filed his motion for discontinuance. There is nothing in the record to suggest that Nash or her counsel was attempting to mislead the court or evade the court's supervisory control of the litigation. No evidence was taken, but Nash's counsel represented to the trial court that Nash's unresolved medical problems caused her delay, and Jewell's counsel represented that he was prejudiced by the delay because he no longer knew where Jewell, with whom he had once discussed the case, was located. Jewell's counsel conceded, however, in oral argument that he could have set the case for trial on his own initiative. If he had done so, he might have avoided the risk of an unavailable defendant or missing witnesses.

Under the circumstances of this case, we hold that the trial court abused its discretion in granting Jewell's motion to discontinue the action. Therefore, we find it unnecessary to decide whether the court erred in refusing to reinstate the case on Nash's motion after it had been ordered stricken from the docket.

Jewell contends, however, that when Nash elected to take a nonsuit the case was terminated, subject to her right to file a new motion for judgment. Jewell says that once the election was made the nonsuit could not be withdrawn and that the trial court erred in ruling to the contrary. We do not agree.

In *Walkers* v. *Boaz*, 41 Va. (2 Rob.) 485 (1843), plaintiffs took a nonsuit with the understanding that the trial court would reconsider a certain opinion regarding the case. Subsequently, plaintiffs unsuccessfully sought to withdraw their nonsuit. On appeal, we reversed, holding that the trial court "in the exercise of a sound discretion, should . . . have set aside the nonsuit." *Id*. at 491.

In *Wickham* v. *Green*, 111 Va. 199, 68 S.E. 259 (1910), we stated that "the prevailing rule is that motions to set aside a nonsuit, or to reinstate a suit after dismissal, are addressed to the judicial discretion of the court." *Id*. at 203, 68 S.E. at 261. Nevertheless, under the facts of that case, we reversed the judgment of the trial court permitting the plaintiff to avoid dismissal of his action by filing his declaration late. We held that the plaintiff had

the duty of showing good cause for his motion to reinstate his suit, and that he had failed to do so.

*Walkers* and *Wickham* were decided before the enactment of Code § 8.01-380, the statute dealing with nonsuits. Jewell argues that this statute now controls and that it should be strictly construed. He says that the discretionary rule set forth in *Walkers* and *Wickham* has been superseded by the statute, which gives a plaintiff one nonsuit as a matter of right. Additional nonsuits may be allowed, however, under the statute. But the mandate of the statute as to the conditions under which nonsuits may be taken does not apply to the withdrawal of nonsuits.

It is true, as Jewell argues, that under Code § 8.01-380, a plaintiff has an absolute right to one nonsuit. The election is his and if he insists upon taking the nonsuit within the limitations imposed by the statute, neither the trial court nor opposing counsel can prevent him from doing so. *See Newton* v. *Veney & Raines*, 220 Va. 947, 265 S.E.2d 707 (1980); *Berryman* v. *Moody*, 205 Va. 516, 137 S.E.2d 900 (1964). Nevertheless, courts act by orders and decrees. *See Walker* v. *Commonwealth*, 225 Va. 5, 301 S.E.2d 28 (1983); *Cunningham* v. *Smith*, 205 Va. 205, 135 S.E.2d 770 (1964). There is no termination of litigation until the court enters an appropriate order. Therefore, before entry of such an order the plaintiff may reconsider his decision to take a nonsuit. He has no right to withdraw the nonsuit, but he has a right to move the trial court to permit withdrawal. The granting or denial of the motion is a matter for the trial court to determine in the exercise of judicial discretion.

Presumably, after a plaintiff's counsel has announced his intention to nonsuit the case, if a jury has been dismissed, witnesses have been excused, or other inconvenience would result from the granting of a motion to withdraw the nonsuit, the trial court will deny the motion. In the present case, however, the record shows no abuse of discretion by the trial court in granting Nash's motion; indeed, Jewell has not argued to the contrary. We hold, therefore, that the trial court did not err in permitting Nash to withdraw the nonsuit.

For the reasons assigned, we will reverse the judgment of the trial court dismissing the action and remand the case for trial.

*Reversed and remanded.*